UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VADIM ZAVORIN,

                          Petitioner,

          v.

CAMILA WAMSLEY et al.,

                          Respondents.

CASE NO. 2:26-cv-00173-DGE

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS
(DKT. NO. 1)

This matter comes before the Court on Petitioner Vadim Zavorin's petition for writ of habeas corpus. (Dkt. No. 1.) For the reasons discussed below, the Court GRANTS the petition.

## I    BACKGROUND

On November 5, 2022, Petitioner, a native and citizen of Russia, applied for admission into the United States at the San Ysirdo, California port of entry pursuant to the CBPOne program. (Dkt. Nos. 5 at 2; 6-1 at 3.) Because Petitioner was with his minor child, Border Patrol

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

paroled Petitioner into the United States and served him with a Notice to Appear.[1]  (Dkt. Nos. 5 at 2.; 6-1 at 4.)  The Notice to Appear identified Petitioner as an "arriving alien" and charged him as removable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2,3]  (Dkt. No. 6-2 at 2, 5.)  Petitioner's Form I-94, Arrival/Departure Record identifies his "Class of Admission" as "DT", or non-categorical parole into the United States.  (Dkt. No. 6-3 at 2.); United States Citizenship and Immigration Services, *FAQs on the Effect of Changes to Parole and Temporary Protected Status (TPS) for SAVE Agencies*, https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (last visited Feb. 2, 2026).  United States Citizenship and Immigration Services defines "non-categorical parole" as parole based on "urgent humanitarian reasons or a significant public benefit."  *Id.*

On May 27, 2023, Petitioner applied for asylum and withholding of removal.  (Dkt. No. 5 at 2.)  On October 17, 2023, an immigration judge sustained the charge of removability and directed Russia as the country of removal.  (*Id.* at 3.)  On October 25, 2023, Petitioner reported to ERO as instructed and updated his address.  (*Id.*)  He was instructed to report again on October 24, 2024.  (*Id.*)  A declaration from Enforcement Removal Officer Javier Delgado notes

---

[1] Although Respondents created and issued these parole documents, they could not locate "parole documents, any evidence of extension to Petitioner's parole, or parole revocation documentation."  (Dkt. No. 4 at 3, n.3.)

[2] The Notice to Appear identifies Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), which is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I).

[3] On February 23, 2023, Enforcement and Removal Operations ("ERO") cancelled the November 5, 2022 Notice to Appear and issued Petitioner a new Notice to Appear that again identified Petitioner as an "arriving alien," and again charged Petitioner as removable pursuant to § 1182(a)(7)(A)(i)(I).  (Dkt. Nos. 5 at 2; 6-4 at 2, 5.)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

that Petitioner did not report as required on October 25, 2024, and again failed to report on October 27, 2025.[4] (*Id.*)

On January 5, 2026, immigration officers arrested Petitioner during a traffic stop pursuant to an administrative warrant.[5] (*Id.*; Dkt. No. 6-6 at 2.) Record checks revealed that Petitioner "was currently in removal proceedings and was initially non-detained due to having a minor child," but Petitioner's "child is no longer a minor and [Petitioner] failed to check in." (Dkt. No. 6-5 at 3.) Thus, ERO management "approved the custody redetermination." (*Id.*) Petitioner was taken into custody and subsequently transferred to Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), where he remains today. (*Id.* at 4; Dkt. No. 1 at 2.) A Notice of Custody Determination dated January 5, 2026 notes that the Department of Homeland Security ("DHS") detained Petitioner pursuant to "section 236 of the [INA] and part 236 of title 8, Code of Federal Regulations[.]" (Dkt. No. 6-7 at 2.)

On January 16, 2026, Petitioner filed a petition for writ of habeas corpus alleging his parole was revoked in violation of the Due Process Clause of the Fifth Amendment. (Dkt. No. 1.) Respondents filed a response on January 30, 2026. (Dkt. No. 4.) Petitioner filed a reply on February 2, 2026. (Dkt. No. 7.)

---

[4] Petitioner also identifies he pleaded guilty to Driving Under Influence in October 2023. (Dkt. No. 1 at 5.) Yet, Respondents' I-213 Form from January 5, 2026 notes that Petitioner has no criminal history; nor does Officer Delgado identify any criminal history. (Dkt. No. 6-5 at 4; *see generally* Dkt. No. 5.) Neither party argues that Petitioner's criminal history is relevant here. Therefore, the Court does not consider this disputed fact.

[5] The administrative warrant authorized immigration officers to arrest Petitioner pursuant to Immigration and Nationality Act § 236, or 8 U.S.C. § 1226. (Dkt. No. 6-6 at 2.)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

## II    LEGAL STANDARD

### A. Habeas Petitions

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### B. Parole

It is undisputed that Petitioner is an applicant for admission who is subject to mandatory detention pursuant to § 1225(b)(2), and DHS paroled Petitioner into the United States in November 2022.  (Dkt. No. 4 at 3; *see* Dkt. No. 7 at 2-3.)

8 U.S.C. § 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]"  8 U.S.C. § 1182(d)(5)(A).  The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).  In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 4

that individual, and that the individual did not pose a security or flight risk.  To revoke parole, in turn, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen.  8 C.F.R. § 212.5(e)(2)(i) (upon accomplishment of the purpose for which parole was authorized or in the opinion of one of the officials that neither humanitarian reasons nor public benefits warrants continued presence, "parole shall be terminated upon written notice to" the noncitizen); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]").

### III    ANALYSIS

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether a

governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335.

### A. Private Interest

Even individuals like Petitioner who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482.

Respondents acknowledge Petitioner has "some liberty interest in his continued freedom from detention while on parole," but that liberty interest is lessened because Petitioner is legally treated "as at the threshold of entry—as opposed to within this country's borders[.]' (Dkt. No. 4 at 5 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 6

This "entry fiction" applies to "to some individuals within the United States but who, as a result of their status, are deemed technically to be outside." *Xi v. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002).  For example, "[noncitizens] who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)).  The Supreme Court has held that this means that a noncitizen in such circumstances is limited to "only those rights *regarding admission* that Congress has provided by statute." *Id.* at 140 (emphasis added).  "But the Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the *detention* of a person living freely, for years, within the United States—and its expansion here cannot be justified." *Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *2 (D. Mass. Nov. 7, 2025) (emphasis added); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 147, 151 (W.D.N.Y. 2025) ("While *Thuraissigiam* forecloses the argument that [petitioner] has due process rights beyond those provided by statute concerning the process for deciding whether or not he will be *admitted* to this country, it does not foreclose his arguments regarding parole revocation and release.").

Here, where Petitioner has lived with relative freedom in the United States for over four years, "the [C]onstitution does not countenance fictional erasure of [his] actual presence in this country—or [his] concomitant due process rights." *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026).  Instead, as described in *Morrissey*, parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  "Though

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 7

the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Because "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," the revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and the parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84 (citation modified). This Court "joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*." *Torres*, 2026 WL 145715, at *5 (collecting cases).

Petitioner had a liberty interest in being free from imprisonment while on parole. Though not entitled to unconditional or perpetual parole, Petitioner was entitled to the procedural protections described above before his parole was revoked. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i). While Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens (*see* Dkt. No. 4 at 4), that does not negate Petitioner's liberty interest in not being detained. Petitioner's strong private interest in his continued liberty means the first *Mathews* factor weighs in his favor.

**B. Risk of Erroneous Deprivation**

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. This factors also weighs strongly in Petitioner's favor. Respondents do not assert that they revoked Petitioner's

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

parole because the DHS Secretary or other authorized individual[6] determined that the purposes of the parole have been served or that subsequent changes justified Petitioner's re-detention, and instead vaguely assert "ERO management approved the custody redetermination."[7]  (*See generally* Dkt. Nos. 4 at 5; 6-5 at 3.)  Nor do Respondents assert that they provided Petitioner with written notice of his revocation, as required by 8 C.F.R. § 212.5(e)(2)(i).  (*See id.*; Dkt. No. 1 at 5-6.)  The risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation.[8]

As a last-ditch effort, Respondents contend that because Petitioner is subject to mandatory detention under § 1225(b)(2), any pre-deprivation hearing would be futile.  (Dkt. No. 4 at 6.)  The Court rejects this argument.  Regardless of the reason for Petitioner's detention, Respondents are obligated to "effectuate [his] detention in a manner that comports with due process."  *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

**C.  Government's Interest**

---

[6] Pursuant to 8 C.F.R. § 212.5(a), the authority of the DHS Secretary can be exercised by "the Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing[.]"

[7] Though Respondents contend officers correctly revoked Petitioner's parole due to his failed ICE check ins, they do not assert that an authorized individual made this determination. (Dkt. No. 4 at 5.)

[8] Petitioner argues that officers failed to determine whether he was a flight risk or danger to the community before detaining him. (Dkt. Nos. 1 at 6; 7 at 2).  However, parole may be revoked if an authorized DHS official determines the purposes of parole has been accomplished or neither humanitarian reasons nor public benefits warrants continued presence.  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i).

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient. And although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude Petitioner's circumstances presented such an urgent scenario. Furthermore, the Court acknowledges that the government has a strong interest in returning noncitizens to custody who violate conditions of release, but there is no indication that providing Petitioner with notice and an opportunity to be heard on the basis for revoking his parole would have impaired this interest. *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025) ("[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." (citation modified)).

In sum, all three *Mathews* factors favor Petitioner. Respondents' detention of Petitioner violates the due process protections afforded to him by the Constitution. Petitioner has proven

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 10

by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

### IV     CONCLUSION

For the reasons set forth above, the Court GRANTS Petitioner's writ of habeas corpus (Dkt. No. 1) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1)** day of this order and return him to his previous conditions of parole

2. Petitioner SHALL not be re-detained without first complying with the pre-derivation requirements identified in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i).

3. Within **TWENTY-FOUR (24)** hours of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

4. Lastly, Petitioner seeks an award of attorney fees. (*See* Dkt. No. 1 at 10.) Petitioner is GRANTED leave to file a motion for attorney fees. The motion for fees shall identify the legal authority supporting an award of fees and shall be filed no later than **March 9, 2026**. If no motion is filed by such date, this matter will be closed. The Clerk is directed to calendar this event.

Dated this 5th day of February, 2026.



David G. Estudillo
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 11